Argued September 20, reversed September 25, rehearing denied November
6, 1917.

## HEIDEL *v.* SHUTE.

(167 Pac. 586; 168 Pac. 298.)

Equity—Cross-bill—Matters of Defense.

1.   The cross-bill of H. against S., in action by S. to recover for
advances for payment of land made by S. under agreement of H. to
repay half of them, states matters of defense, entitling H. to equi-
table relief, and not of mere counterclaim; it averring the money ad-
vanced was to be repaid out of the profits from resale of the land;
that it had been resold, and the proceeds received and disposed of by
S., who has refused to account therefor; that H. does not know what
the profits are, and cannot know what, if anything, is still due S. on
his advances; and asking for an accounting.

[As to nature and objects of cross-bills, see note in 83 Am. Dec.
251.]

Account—Complaint—Demand.

2. Averment of the complaint that defendant has at all times re-
fused to render to plaintiff a statement of account implies a previous
demand, and is equivalent to an allegation of demand and refusal.

### ON PETITION FOR REHEARING.

Appeal and Error—Presumptions—Demurrer—Admission.

3. Where the decree appealed from involves only the cross-bill, a
demurrer to the cross-bill, and a ruling sustaining the demurrer, it
must be assumed on appeal that the cross-bill correctly states the facts.

Equity—Cross-bill—Matters of Defense—Counterclaim—Statute.

4. Matters constituting a counterclaim may not be pleaded as a
cross-bill.

Equity—Pleading—Complaint in Nature of Cross-bill—Statute.

5. The relief sought in a suit in equity in the nature of a cross-bill
must operate as an entire or partial defense to an action at law, and
the mere fact that defendant states a cause of action entitling him to
equitable relief does not warrant filing of such complaint.

From Washington: JAMES A. EAKIN, Judge.

Suit by a cross-bill in equity by F. M. Heidel against
J. W. Shute in which a demurrer to the cross-bill was
sustained, a decree entered dismissing the suit and
plaintiff appealed. Reversed with directions.

Department 1. Statement by MR. JUSTICE BENSON.

The facts of this case are as follows: Defendant
Shute began an action at law against plaintiff Heidel
seeking to recover upon two causes of action. The
first was upon a promissory note for $50 which has
no connection with the questions submitted upon this
appeal, and the second stating the cause of action as
follows:

"That on or about the 15th day of June, 1907, the
plaintiff herein and the defendant entered into an
agreement, wherein and whereby it was understood
and agreed that the plaintiff herein should pay to
F. C. King of Portland, Oregon, the sum of $2,500,
for the purchase price of certain interests of said F. C.
King in and to certain lands in Washington County,
Oregon; and wherein and whereby F. M. Heidel, un-
dertook, promised and agreed, to repay and reim-

burse the plaintiff to the extent of one half of the moneys so advanced and paid by the plaintiff to said F. C. King, as aforesaid, together with interest thereon from the date of such advance until repaid, at the rate of ten per cent per annum."

This paragraph is followed by allegations of advances aggregating $1,167.50, no part of which has been paid except $349.75, and a prayer for judgment.

Heidel filed an answer admitting the execution of the fifty-dollar note, admitting, substantially, the allegations of the paragraph above set out. It is then alleged that plaintiff has already received from the defendant, and from moneys belonging to defendant, more than enough to fully pay both causes of action. Then follow allegations to the effect that defendant has further matters of defense which are cognizable only in a court of equity and tenders and files a cross-bill in equity, wherein Heidel is plaintiff and Shute is defendant. To this cross-bill defendant demurred and the trial court sustained the demurrer, whereupon, plaintiff having declined to plead over, a decree was entered dismissing the suit and plaintiff appeals.

REVERSED WITH DIRECTIONS.

For appellant there was a brief over the names of *Mr. A. E. Clark* and *Messrs. Peters & Turner,* with an oral argument by *Mr. R. F. Peters.*

For respondent there was a brief over the name of *Messrs. Bagley & Hare,* with an oral argument by *Mr. William G. Hare.*

MR. JUSTICE BENSON delivered the opinion of the court.

1. The sole question presented for our consideration is: Does the cross-bill state facts entitling plaintiff to

equitable relief? The pleading under consideration is quite long and contains an elaborate recital of many involved transactions, which we find it unnecessary to mention in detail. Defendant contends that all of these matters are purely counterclaims and therefore not defenses and consequently not proper matters in a cross-bill. The first paragraph of the complaint herein reads as follows:

"That on or about the 20th day of June, 1907, the plaintiff and the defendant entered into an agreement wherein and whereby it was agreed that the defendant should advance the sum of twenty-five hundred dollars ($2500) in connection with the purchase of a large quantity of land known as the F. C. King land; and it was understood and agreed in connection there-with that plaintiff should repay to the defendant one-half of the amount advanced, out of the profits to be derived from the sale of said land and premises; and about the same time, in connection with the same lands it was agreed, between plaintiff and the defendant and one M. J. Kinney, that upon the sale of said lands the profits made upon the sale, over and above the purchase price and all legitimate expenses, should be divided as follows: To M. J. Kinney, fifty per cent; to J. W. Shute, twenty-five per cent; and to F. M. Heidel, twenty-five per cent."

This is followed by allegations to the effect that the lands in question were sold for $84,000; that these lands and others were combined as mortgage security for the purchase price; that the defendant, for himself and coadventurers, received the $84,000 kept the accounts himself, distributed the funds according to his own will and without consulting his associates, has at all times refused to render an account, and plaintiff does not know and therefore cannot state the amount of profits derived from the sale of the lands; but, upon information and belief alleges that plain-

tiff's share thereof "exceeds the sum of $——." The prayer is for an accounting, and that the court determine the amounts due to plaintiff and defendant and for general relief. As already suggested, the history of the transactions is much more extensive than we have now outlined and many matters are pleaded in which affirmative relief is sought, but enough is indicated to disclose that the pleading contains sufficient statements of fact to render it invulnerable to attack by demurrer. It will be observed that it is averred that the money advanced by Shute was to be repaid out of the profits to be derived from the sale of the lands; that the lands have been sold, the proceeds received and disposed of by defendant, who has refused to account for the same; that plaintiff does not know what the profits are and cannot know what amount, if anything, is still due to defendant upon his advances in the purchase of the land. These allegations clearly distinguish the situation from a mere pleading of counterclaim and discloses matters material to plaintiff's defense in the law action.

2. Defendant also urges that the complaint is defective because there is no allegation of a demand for an accounting. This point is not well taken since the complaint alleges that the defendant "has at all times refused and neglected to render to this plaintiff a full, true and correct statement of the account between plaintiff and defendant herein." In the case of *Brossard* v. *Williams,* 114 Wis. 89 (89 N. W. 832), the court says:

"The defendant insists that the complaint is insufficient because it fails to allege a demand upon the defendant before the commencement of the suit. It is alleged that the defendant refuses and has ever refused to account or pay over the indebtedness sued for. Defendant's contention is completely answered by the

case of *Divan* v. *Loomis,* 68 Wis. 150 (31 N. W. 760), in which it is said: 'An allegation of refusal implies a previous demand and is equivalent to an allegation of demand and a refusal.'"

The same conclusion is reached in the following cases: *Ferguson* v. *Hull,* 136 Ind. 339 (36 N. E. 254); *Worth* v. *Wharton,* 122 N. C. 376 (29 S. E. 370), and *Mason* v. *Carter,* 8 S. C. 103.

We conclude that it was error to sustain the demurrer. The decree is therefore reversed and the cause remanded with directions to overrule the demurrer.        REVERSED WITH DIRECTIONS.

REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BURNETT and MR. JUSTICE HARRIS concur.

---

Denied November 6, 1917.

## ON PETITION FOR REHEARING.

(168 Pac. 298.)

*Messrs. Bagley & Hare,* for the petition.

*Mr. A. E. Clark* and *Messrs. Peters & Turner, contra.*

Opinion PER CURIAM:

The defendant has petitioned for a rehearing and he insists with much earnestness that the original opinion, reported in (Or.), 167 Pac. 586, "shows a misapprehension of the facts." The facts must be ascertained from an inspection of the pleadings. In the action at law J. W. Shute states two causes of action, one arising out of a promissory note for $50 and the other relating to the advances made by Shute for the

purchase of the King lands. The cause of action concerning the note may be dismissed from further consideration for the reason that it is not connected with any transaction involving the King lands, and, moreover, the defendant in the action admits his liability on the note. In substance the answer filed by F. M. Heidel in the action at law admits that the parties agreed that Shute was to pay "$2,500 as option money" on the King lands and that Heidel would reimburse Shute "for one half of the amount so advanced"; and it is alleged that Shute has received from moneys belonging to Heidel a sum greatly in excess of the amount advanced for Heidel.

3. The complaint in equity, for convenience called a cross-bill because it is in the nature of one, relates the facts relied upon by Heidel; and, for the purposes of this discussion, it must be assumed that the cross-bill correctly states the facts since the decree appealed from involves only the cross-bill, a demurrer to the cross-bill and a ruling sustaining the demurrer. The cross-bill relates all the transactions involving the King lands from the time Shute and Heidel agreed to purchase the property until the final disposition of the premises. In June, 1907, Shute and Heidel concluded to purchase the King lands, and it was agreed that Shute would advance $2,500 on the purchase price and that Heidel would repay Shute one-half of the sum so advanced "out of the profits to be derived from the sale of said land and premises." A third party, M. J. Kinney, became interested in effecting a sale of the property, and it was agreed between Shute, Heidel, and Kinney that Kinney should have 50 per cent, Shute 25 per cent and Heidel 25 per cent of the net profits. From time to time Shute made advances which in the aggregate amounted to $2,335; and, hence, Heidel owed

Shute $1,167.50 on account of moneys advanced by the latter. In November, 1909, the King lands, together with other lands, were sold to the Washington County Abstract, Title & Trust Company for the agreed price of $84,000. The conveyance to the Abstract Company included not only the King lands embracing about 1,445 acres, but also an additional 655 acres. Shute was entitled to share in the profits realized from a sale of the King lands, but he was not entitled to share in any profits accruing from a sale of the additional 655 acres.

The Abstract Company had no money with which to pay for the land transferred to it, and it was agreed that the company would mortgage the premises and by that means raise sufficient funds to pay for the property. The plan was carried out by giving a mortgage on the King lands, the 655 acres and also on an additional 4,000 acres to Benjamin Schofield for $94,000. The extra 4,000 acres were "put in by" Kinney and Heidel for the purpose of making the mortgage more readily marketable. It is not claimed that $94,000 was actually paid for the mortgage but, according to the averments of the cross-bill, it was agreed between Shute, Heidel and Kinney that Schofield should have a bonus of $10,000, and hence of the $94,000, expressed as the consideration for the mortgage, $10,000 represented the bonus to Schofield and the remaining $84,000 represented the sum needed to pay for the 2,100 acres of land. Heidel alleges in his cross-bill that he and Kinney understood and believed that Schofield was a *bona fide* mortgagee, and, as such, furnished whatever funds were raised on the mortgage, but that instead of acting for himself Schofield was in reality acting as the secret representative of Shute; and that therefore the $10,000 allowed to Schofield as a bonus should be treated as a profit received by Shute on the sale of the

premises. After alleging that the "King lands, and other lands" were sold for $84,000, the following averment is found in paragraph II of the cross-bill:

"That out of the proceeds of said sale there was paid to and retained by the defendant to apply upon the one-half of the amount to be paid by the plaintiff to the defendant on account of the advance made by the defendant in connection with the F. C. King land, the sum of $1,299.45, which was considerably in excess of the amount due to the defendant from the plaintiff in the premises."

In paragraph VII the following appears:

"That, as heretofore stated, the defendant received and undertook to distribute the proceeds of the so-called Schofield mortgage received upon the conveyance of the said property, as aforesaid, and in the making of said distribution wrongfully withheld and appropriated to his own use, not only the $10,000.00 bonus or discount on the mortgage, one-fourth of which equitably belonged to this plaintiff, but in addition thereto, one-fourth of the profits upon the King lands, and in addition thereto the sum of $1,299.45, of the moneys belonging to the plaintiff herein as his share of the profits and proceeds of the F. C. King land, and in addition thereto retained and appropriated to his own use wrongfully one-fourth of the profits upon the land hereinbefore described, which were not included among the F. C. King lands, which amount of profits so retained and appropriated by the defendant did not belong to him, in whole or in part, but in truth belonged to and should have been paid over to this plaintiff."

Paragraph VIII contains the following unambiguous allegation:

"This plaintiff does not know, and therefore cannot state with certainty the amount of the profits retained and appropriated by the defendant for his own use out of the sale of the F. C. King lands."

4, 5. The foregoing statement is only an outline of the cross-bill and yet it is sufficient to enable an examination of the points made by the defendant. Shute contends that the doctrines announced in *Haaland* v. *Miller,* 67 Or. 346 (136 Pac. 9), and in *Tooze* v. *Heighton,* 79 Or. 545 (156 Pac. 245), are decisive of the instant case and preclude the maintenance of the cross-bill. The rules applied in both these precedents are recognized here as the settled law and cannot be violated. The instant cross-bill states a cause of suit and yet that is not enough to sustain it as a cross-bill. The pleading avers a counterclaim and still that is not sufficient to support it as a cross-bill. Turning to the answer in the action at law it will be observed that Heidel relies upon payment as a defense. Again noticing the cross-bill it will be seen that Heidel continues to maintain the position that the debt has been paid. It must be remembered at all times, too, that the stipulation to repay Shute out of the profits is not found in an agreement separate and apart from the agreement for the advances, but a single agreement included the two stipulations, one that Shute should advance $2,500 and the other that one-half of the advances should be repaid out of Heidel's share of the profits. The plaintiff here rests his cross-bill upon the claim that the very agreement, which created the debt, has by the operation of one of its terms liquidated the debt so that the debt no longer exists. The cross-bill charges that Shute retained $1,299.45 ''of the moneys belonging to the plaintiff herein as his share of the profits and proceeds of the F. C. King land.'' If this allegation is to be construed as a statement that Heidel's share of the profits on the King lands amounted to $1,299.45 it would be a complete defense to the action and the cross-bill could not be maintained

even though Heidel might be entitled to prosecute a
suit in equity for an accounting of the proceeds de-
rived from the 655 acres. If the $10,000 is to be
treated as money had and received, and if it stood
alone, it would be available as a complete defense to
the action and would not be enough to support the
cross-bill even though Heidel might be entitled to main-
tain a suit in equity for an accounting of the moneys
received for the 655 acres of land. As we understood
his argument, counsel for the defendant takes the posi-
tion that an accounting is not necessary to determine
how much of Heidel's share of the profits from the
King lands was retained by Shute since the cross-bill
specifically states that Shute retained $1,299.45.

The defendant says in his petition for a rehearing
that the cross-bill shows that $2,500 ''by way of bonus''
and ''$1,299.45 by way of profits'' were all the sums
that Heidel ''was entitled to out of the King deal.'' If
the pleading states that the total amount of Heidel's
share of the profits was $1,299.45 and if the $10,000
bonus is to be treated as money had and received then
it would necessarily follow that the defenses would be
complete at law and the cross-bill could not be main-
tained. But as we read the cross-bill Heidel alleges
that he does not know and cannot tell without an ac-
counting just how much his share of the profits on the
King lands is, although he does know that of the
total amount of his share Shute has retained at least
$1,299.45. If paragraphs II and VII stood by them-
selves and the language of those paragraphs were con-
strued more strictly against the pleader there would
probably be room for the contention that the cross-bill
states that Heidel's share of the profits was $1,299.45;
but when paragraphs II and VII are read in connection
with paragraph VIII all possible doubt is removed,

for in one paragraph the pleader says that Shute re-
tained ''$1,299.45 *of* the moneys belonging to the plain-
tiff herein as his share of the profits and proceeds of
the F. C. King land,'' and in the following paragraph he
directly and unequivocally avers that he does not know
the amount of the profits retained by Shute.   If Heidel
knows that Shute retained $1,299.45 and also more, but
does not know how much more and cannot know how
much more without an accounting, it is plain that
Heidel is entitled to make his defense complete, prac-
tical and efficient.  He is not restricted to a partial
defense, but he is entitled to avail himself of his whole
defense.   If we read the cross-bill aright only a part
of his whole defense would be available in the action
whereas the whole of the defense could be employed in
the suit.   The petition for a rehearing is denied.

REHEARING DENIED.